UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,         Case Number 15-20317
v.                   Honorable David M. Lawson

ERIK CARTER,

      Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Erik Carter, who is beginning the fourth year of his ten-year prison sentence for drug crimes, asks the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, and impose a period of supervised release equivalent to the remaining months of his prison term during which he would be confined to his home.  Carter argues that his release is justified by extraordinary and compelling circumstances, consisting of his medical conditions, which include hypertension, obesity, Vitamin D deficiency, prediabetes, and an immunocompromised state resulting from steroids used to treat gunshot injuries.  He contends that these conditions render him unusually vulnerable to complications from infection by the novel coronavirus, to which he likely would be exposed in prison.  The medical records, however, disclose that Carter's medical conditions are not as serious as he describes them, and the risk of complications from a viral infection do not amount to the extraordinary and compelling reasons necessary to warrant a sentence reduction under section 3582(c)(1)(A)(i).  The motion will be denied.

I.

Carter was the leader of a drug trafficking organization known as the "500 Block Boys" that operated in one of Detroit's east side neighborhoods. The FBI began investigating the group in early 2011. Agents obtained authorization to wiretap the phone of co-defendant, Maurice Littles, which caused the agents to learn that Carter supplied Littles with heroin and other drugs. The agents then tapped Carter's phone, which revealed that he arranged the sale of more than 1.5 kilograms of heroin over five months. Ensuing house searches turned up guns, ammunition, cash, and 250 grams of heroin.

Carter eventually was arrested and, on July 29, 2015, he was charged in a second superseding indictment with conspiracy to possess with intent to distribute controlled substances. He was released on bond, but soon afterward he was in a car when an individual shot him ten times, hitting him in the legs, abdomen, back, and buttocks.

A jury convicted Carter on March 3, 2017, of conspiring to distribute at least one kilogram of heroin. The government sought to remand Carter after his conviction, but the Honorable Avern Cohn declined the request. On September 28, 2018, Judge Cohn sentenced Carter to the mandatory minimum prison term of 120 months. His projected release date is July 5, 2026. He is 44 years old.

Carter is currently incarcerated at FCI Ashland, a low-security prison in Kentucky. FCI Ashland currently houses 1,083 inmates, three of which have active cases of COVID-19. *COVID-19*, Bureau of Prisons (Sept. 18, 2020), https://www.bop.gov/coronavirus/. One staff member has an active case reported. *Ibid.* To date, two other inmates and three other staff members contracted COVID-19 and recovered. *Ibid.*

On May 30, 2020, Carter submitted a request to the warden of FCI Ashland seeking compassionate release due to the health risks posed by the coronavirus pandemic. The warden denied Carter's request on June 2.

The defendant then filed a *pro se* motion for compassionate release on July 30, 2020, which he supplemented with the assistance of counsel on August 27, 2020. He argues that the coronavirus pandemic, in combination with his high blood pressure, prediabetes, obesity, compromised immunize system, and vitamin D deficiency, provide extraordinary and compelling reasons for his release.

The government responded on September 1, 2020, conceding that Carter exhausted his remedies, but it maintains that he has not shown any extraordinary and compelling reasons for his compassionate release. It recognizes that obesity is a high-risk factor for COVID-19, but it contends that Carter's other health problems are not recognized by the CDC as conditions that increase the severity of complications from a COVID-19 infection.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Carter relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

Addressing the second requirement, Carter argues that compassionate release is warranted based on various medical conditions. However, he has not advanced sufficiently compelling circumstances to warrant a sentence reduction based on his medical risk factors, even though one of his pertinent health circumstances (obesity) is a recognized risk factor for coronavirus infection. Moreover, the fact that he is incarcerated at a prison with relatively few past and active cases of COVID-19 argues against a finding that he established an extraordinary and compelling reason for his release. Carter's showing on the second element that he must establish to justify compassionate release — extraordinary and compelling reasons — is insufficient. His health concerns are understandable, but do not warrant immediate release.

The defendant's generalized concerns about the health risks from his incarceration are justifiable. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing *Coronavirus*

*Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness*, Ctrs. for Disease Control and Prevention (June 25, 2020), https://bit.ly/2WBcB16).

The government does not dispute that, as of December 30, 2019, Carter was obese — hovering around a BMI of 32.5. Medical Records dated January 30, 2020, ECF No. 802-3, PageID.4714. However, it maintains that Carter has not pointed to an extraordinary and compelling reason for release because it "does not appear that he has worked to lose weight." Response, ECF No. 799, PageID.4274. Carter's decision to lose weight (or not) has no bearing on this analysis; the question is whether he has a condition that increases his risk of severe COVID-19 infection. The CDC clearly recognizes obesity — be it voluntary or involuntary — as a condition that increases an individual's risk of complications from a coronavirus infection. *People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention (Sept. 11, 2020), https://bit.ly/2WBcB16 ("*Certain Medical Conditions*").

The same cannot be said for the defendant's vitamin D deficiency and prediabetes. They do not elevate his risk of complications. Although there is evidence that malnourishment may increase the risk for viral and bacterial infections, the CDC has never recognized vitamin D deficiency as a condition that may increase the severity of a COVID-19 infection. *Ibid.*; *Ask the Expert: The role of diet and nutritional supplements during COVID-19*, Harvard T.H. Chan School of Public Health (April 1, 2020), https://bit.ly/2RIHnlv.

The combination of diabetes and hypertension may further increase the risk of severe complications from potential infection. *Compare Malam v. Adducci*, --- F. Supp. 3d---, No. 20-10829, 2020 WL 2468481, at *7 (May 12, 2020) (ordering supplemental briefing) *with Perez-Perez v. Adducci*, --- F. Supp. 3d ---, No. 20-10833, 2020 WL 2305276, at *3 (E.D. Mich. May 9, 2020) (granting petition for habeas corpus because defendant had hypertension and was housed in

a facility with a confirmed case of COVID-19). "Pre" diabetes, however, is not a risk factor recognized by the CDC.

The remaining two alleged conditions — hypertension and low immunity — are less clear. The CDC states that individuals with hypertension "*might* be at an increased risk for severe illness from COVID-19." *People with Certain Medical Conditions*, *supra* (emphasis added). Drilling down, though, that condition is grouped with "serious heart conditions" that predispose a person to higher risks of complications. Also included are "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension." *See United States v. Watkins*, No. 10-20545, 2020 WL 5035111, at *4 (E.D. Mich. Aug. 11, 2020) (quoting *People with Certain Medical Conditions*, *supra*). Here, the record suggests that defendant's non-pulmonary hypertension has significantly improved. He has not been prescribed medication for hypertension recently, his most recent test indicates a slightly elevated blood pressure at best (120/84), and the BOP considered his condition "resolved." Medical Records, ECF No. 802-3, PageID.4721. Although Carter has a history of hypertension, *id.*, ECF No. 802-2, PageID.4521, this history is insufficient to justify compassionate release, especially considering that the condition is of the non-pulmonary variety.

Like pulmonary hypertension, the CDC recognizes that individuals with an "immunocompromised state" from the "prolonged use of corticosteroids" "*might* be at an increased risk for severe illness from COVID-19." *Certain Medical Conditions*, *supra* (emphasis added). Here, the defendant alleges that he suffers from a compromised immune system resulting from the use of "steroid shots" to treat his gunshot injuries. However, Carter acknowledged that the BOP recommended that he undergo epidural steroid injections to assist with his nerve pain, but he refused that treatment. Medical Records dated July 17, 2019, ECF No. 802-2, PageID.4454

("Pt does not want epidural steroids at this time."). His medical records contain no other evidence indicating that his immune system may be compromised. The government correctly observes that "Carter has not shown that he had any treatment that may have lowered his immunity, let alone that he is currently immunocompromised."

That leaves one risk factor (obesity) to support his assertion that extraordinary and compelling reasons justify a sentence reduction. Sometimes that can qualify, "but not usually." *United States v. Ball*, No. 14-20117, 2020 WL 4816197, at *6 (Aug. 19, 2020). The recent cases where inmates have been granted judicial relief on motions for compassionate release due to the pandemic generally involve defendants with documented severe, chronic, or terminal conditions that could warrant release even in the absence of a pandemic, or severe medical conditions that placed them at high risk of coronavirus complications. *E.g., United States v. Reads*, No. 16-20827, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (ordering compassionate release of 33-year-old inmate with severe obesity, severe obstructive sleep apnea, hypertension, and "prediabetes"); *United States v. Saad*, No. 16-20197, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020) (ordering compassionate release of inmate who had served 33 months of a 72-month sentence for a non-violent drug offense, was 71 years old, and suffered from medical conditions including kidney disease, hypertension, pulmonary hypertension, sleep apnea, shingles, diabetes, back problems, a frozen thigh from an overdose of coumadin given by prison officials, and who also had a history of heart surgery and knee replacement, and a recent diagnosis of kidney cancer); *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948 (E.D. Mich. June 10, 2020) (ordering compassionate release of 65 year old defendant with a history of heart disease, severe asthma, benign prostate cancer, high blood pressure, type 2 diabetes, who served 69% of his sentence for a non-violent fraud offense, had only one minor disciplinary

incident, and was housed at a facility with several confirmed COVID-19 cases); *United States v. Jajun Omar Gardner*, No. 14-20735, 2020 WL 4200979, at *5 (E.D. Mich. July 22, 2020) (ordering compassionate release where defendant reported a number of serious medical issues, many of which the government did not dispute, including a history of hypertension, a heart condition, stage-two kidney disease, hyperlipidemia, lumbar disc disease, lumbar herniation, spinal cord impingement, an artificial knee joint, an artificial shoulder cup, and sickle cell trait).

By comparison, Carter's own medical condition does not meet the extraordinary-and-compelling threshold. He has only one condition recognized by the CDC as increasing his risk of severe COVID-19 infection and served less than one-third of his sentence.

Moreover, the probability that the defendant may be exposed to the coronavirus in his present situation is quite low. FCI Ashland, where Carter is held now, currently houses three inmates with active cases of COVID-19. *COVID-19*, Bureau of Prisons (Sept. 18, 2020), https://www.bop.gov/coronavirus/. One staff member has an active case reported. *Ibid.* To date, two other inmates and three other staff members contracted COVID-19 and recovered. *Ibid.* No deaths have been reported. *Ibid.* Certainly, the reported low infection rate does not compel the denial of Carter's motion. *See United States v. Rahim*, No. 16-20433, 2020 WL 2604857, at *3 (E.D. Mich. May 21, 2020) ("the Court is not persuaded that a lack confirmed cases alone is a compelling reason not to grant relief if a defendant otherwise qualifies.") (citing *United States v. Pomante*, No. 19-20316, at *4 (E.D. Mich. May 15, 2020) ("Until the BOP increases its testing capacity, a lack of confirmed cases has very little bearing on the amount of actual cases in a federal prison."). However, the most recent reports suggest that the defendant's risk of infection now is as low as it would be in a home setting, considering that the measures taken by the BOP evidently have succeeded in significantly slowing the spread of the disease, despite the recent acceleration

of the pandemic among the public at large, including in Kentucky, where recent daily case counts are trending at consistently high rates. *See Kentucky Covid Map and Case Count*, N.Y. Times https://nyti.ms/301N96f (last visited Sept. 22, 2020).

Carter's showing on the second element discussed above — extraordinary and compelling reasons — is insufficient, so it is unnecessary to discuss the other two.

### III.

Carter has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 786) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 22, 2020